UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAUL SOTO-MEJIA,<br><br>Defendant. | Case No. 2:18-cr-00150-RFB-NJK<br><br>**ORDER** |

Before the Court is Mr. Soto-Mejia's Motion to Dismiss [ECF No. 21] the Indictment in this case, for the reasons stated below the Court GRANTS the Motion to Dismiss.

### I. Factual Findings

Based upon the record, including the joint stipulation of fact submitted by the parties [ECF No. 41], the Court makes the following factual findings. Mr. Soto-Mejia was encountered by immigration officials on February 7, 2018 in California. On that same day, February 7, the Department of Homeland Security issued a Notice to Appear for Removal Proceedings (NTA) against Soto-Mejia. The Notice to Appear stated that Soto-Mejia was to appear before an immigration judge on a date and time "[t]o be set" and at a place "[t]o be determined." Soto-Mejia was personally served with the Notice to Appear at 10400 Rancho Road in Adelanto, California, 92401. The Notice to Appear contained allegations and provided a potential legal basis for Soto-Mejia's removal from the United States. The Notice to Appear was filed with the Immigration Court in Adelanto, California on February 12, 2018.

On February 27, 2018 an order advancing the removal hearing was served on a custodial officer for Soto-Mejia. On February 27, 2018, a letter entitled "Notice of Hearing in Removal Proceedings" addressed to Soto-Mejia at the Adelanto Detention Facility on 10250 Rancho Road

in Adelanto, California, 92301 was served on a custodial officer for Soto-Mejia. The letter indicated that a hearing before Immigration Court was scheduled for March 7, 2018 at 1:00 p.m. The Notice of Hearing did not reference the nature or basis of the legal issues or charges for the removal proceedings. The Notice of Hearing also did not reference any particular Notice to Appear.

On March 7, 2018, the "Order of the Immigration Judge" indicates that Soto-Mejia appeared at the Immigration Court hearing and that he was ordered removed from the United States to Mexico. Soto-Mejia was deported on March 8, 2018. Subsequently, Soto-Mejia was encountered in the United States again and was ordered removed on March 19, 2018. The March 19 Order, as a reinstate of the prior order, derived its authority to order removal from the March 7 Order. The Indictment in this case explicitly references and relies upon the March 7 and March 19 removal orders as a basis for establishing a violation of 8 U.S.C. § 1326 by Soto-Mejia.

## II. Legal Standard

Since a prior order of removal is a predicate element of 8 U.S.C. § 1326, a defendant may collaterally attack the underlying removal order. United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047 (9th Cir. 2004). To prevail on such a collateral challenge to a deportation order, the individual must demonstrate that (1) he exhausted any administrative remedies he could have used to challenge the order (or is excused from such exhaustion); (2) the deportation proceedings deprived the individual of judicial review (or is excused from seeking judicial review); (3) the entry of the order was fundamentally unfair. 8 U.S.C. 1326(d); Ramos, 623 F.3d at 680.

A removal order is "fundamentally unfair" if (1) an individual's due process rights were violated by defects in the underlying proceeding, and (2) the individual suffered prejudice as a result. Ubaldo-Figueroa, 364 F.3d at 1048.

## III. Discussion

The Defendant argues that this case must be dismissed because his criminal prosecution derives from a defective immigration proceeding in which the immigration court did not have

jurisdiction to commence removal proceedings against him because the Notice to Appear initiating the proceeding was defective. He argues that the March 7 Order is thus void as the immigration court did not have jurisdiction to issue an order. He further argues that, as the initial March 7, 2018 deportation order is void, the subsequent reinstatement removal order of March 19, 2018 is also void as it derived its authority from the March 7 Order. Specifically, Soto-Mejia argues that the initial Notice to Appear that issued in his case did not include a time and location for the proceeding. Relying upon the United States Supreme Court's recent decision in Pereira v. Sessions, 138 S.Ct. 2105 (2018), Soto-Mejia argues that a notice to appear must contain a location and time for a removal hearing in order to create jurisdiction for the immigration court. Id. at 2110. As the Notice to Appear in this case did not contain such information, the immigration court, according to Soto-Mejia, did not have jurisdiction to issue a removal or deportation order.

The government responds with several arguments. First, the government argues that Soto-Mejia waived his argument regarding jurisdiction—claiming that it is personal rather subject matter jurisdiction which is at issue—by not raising a jurisdictional objection in the immigration proceeding and conceding to the immigration court's jurisdiction by appearing. Second, the government avers that the immigration court's jurisdiction is determined by the federal regulations and that the Notice to Appear in this case contained the information it must pursuant to those regulations to vest the immigration court with jurisdiction. See 8 C.F.R. §§ 1003.14(a), 1003.15(b) and (c). Third, the government argues that the holding in Pereia is limited to the cases in which a court must determine the validity of a particular notice to appear as it relates to the triggering of the "stop-time rule." Id. at 2116. Fourth, the government argues that there is no prejudice to Soto-Mejia as any defect was cured by the Notice of Hearing and Soto-Mejia's participation in the removal proceedings. The Court rejects all of the government's arguments.

**A. The Removal Orders of March 7 and March 19 Violated Due Process As the Immigration Court Lacked Subject Matter Jurisdiction**

The Court finds that Supreme Court's holding in Pereira to be applicable and controlling in this case. First, the Court finds pursuant to the plain language of the regulations that the jurisdiction of the immigration court "vests" only "when a charging document is filed with the

Immigration Court." 8 C.F.R. §1003.14. A "Notice to Appear" is such a "charging document." Id. at § 1003.13. Relying upon the reasoning of Pereira, this Court finds that the definition of a "Notice to Appear" is controlled by statute and not regulation, as the Supreme Court expressly rejected in Pereira the regulation-based interpretation by the Board of Immigration Appeals in Matter of Camarillo, 25 I. & N. Dec. 644 (2011). Pereira, 138 S. Ct. at 2111-14. And, pursuant to Pereira, a Notice to Appear must include the time and location for the hearing. Id. at 2114-17. As the Notice to Appear in this case failed to include the time and location for the hearing, the immigration court did not have jurisdiction to issue its March 7 deportation order.

The Court rejects the government's argument that Soto-Mejia waived his jurisdictional argument by not raising it earlier and by participating in the underlying immigration proceeding. The government's argument conflates personal jurisdiction with subject matter jurisdiction. Soto-Mejia's argument is founded upon his assertion that the immigration court lacked subject matter jurisdiction and not personal jurisdiction. Subject matter jurisdiction is a limitation on "federal power" that "cannot be waived" so "a party does not waive the requirement [of subject matter jurisdiction] by failing to challenge jurisdiction early in the proceedings." Ins. Corp. of Ireland v. Compagnie des Bauxites, 456 U.S. 694, 702-03 (1982). Moreover, the plain language of the regulation establishing the immigration court's jurisdiction explicitly notes that an immigration court's authority only "vests" with the filing of a "charging document" and the regulation makes no reference to a waiver exception to this requirement for subject matter jurisdiction. 8 C.F.R. § 1003.14(a).

The Court also rejects the government's argument that the holding in Pereira is limited to cases determining the applicability of the stop-time rule. As noted, the Supreme Court's holding in Pereira was based upon the plain language of the text of 8 C.F.R. §§ 1003.13 and 1003.14 and 8 U.S.C. § 1229(a). Pereira, 138 S. Ct. at 2111-13. Section 1003.13 specifies which documents can constitute a "charging document" for immigration proceedings after April 1, 1997. The parties all concede in this case that the only document in this record that is a "charging document" is the Notice to Appear. Id. The Court in Pereira explained that the text of Section 1229(a) lays out the statutory definition of and requirements for a "Notice to Appear" which includes the time and

4

location for the hearing. 138 S. Ct. at 2114. The Supreme Court unambiguously proclaimed: "***A putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is <u>not</u> a 'notice to appear under section 1229(a).'"*** Id. at 2113-14 (emphasis added). While the Supreme Court applied this definition to the determination of the applicability of the stop-time rule, the express language of this holding does not suggest any limitation on the Court's <u>definition</u> of what is and is not a "Notice to Appear" under Section 1229(a) with respect to the requirement for the notice to contain a time and location.

There is no basis to assume or conclude that the definition of a "Notice to Appear" under Section 1229(a) would be different without reference to the stop-time rule. That is because the fundamental question that the Supreme Court was answering in Pereira is whether a notice must contain the time and location of the hearing **to be** a "notice to appear" under Section 1229(a). 138 S. Ct. at 2113-17. In answering this foundational question, the Court did not rely upon the stop-time rule to determine the definition of a notice to appear under Section 1229(a). To the contrary, the Court spent considerable time explaining why consideration of the stop-time rule's "broad reference" to all of the paragraphs of Section 1229(a) did not alter the fact that the essential definition of and requirements for the notice arise in the first paragraph. 138 S. Ct. at 2114 (noting that the "broad reference to §1229(a) is of no consequence, because as even the Government concedes, only paragraph (1) bears on the meaning of a 'notice to appear'"). This first paragraph requires that the notice contain the time and location for the removal proceeding.

The Court is also unpersuaded that a defect in a "Notice to Appear" can be 'cured' as the government suggests by the filing and/or serving of the Notice of Hearing on Soto-Mejia. That is because such an argument is contrary to the plain text of the regulation, Section 1003.14(a), which unequivocally states that an immigration court's jurisdiction only "vests" or arises with the filing of a "charging document." A Notice of Hearing is not one of the "charging documents" referenced in Section 1003.13. A Notice of Hearing cannot therefore commence an immigration proceeding by subsequently providing a time and location for a removal hearing. Consequently, if the immigration court's jurisdiction never arose because the Notice to Appear was invalid, then there is no proceeding in which a Notice of Hearing could properly be filed. There is nothing to cure.

5

Moreover, the Court also finds that the Notice of Hearing in this case did not reference a specific Notice to Appear. Indeed, the government conceded and the Court finds that the Notice of Hearing form does not generally, or in this case, reference a prior specific Notice to Appear and it does not contain information about the legal issues or charges which serve as a basis for the removal proceedings. The two documents only common identifying information is the A-file number of the particular person—Soto-Mejia in this case. This means that if an individual had multiple potential charges or legal issues related to his immigration status, the Notice of Hearing could not inform him about which charges were at issue in the upcoming hearing and the Notice of Hearing could be filed months or years after the Notice to Appear. Indeed, this is the very reason that the Supreme Court in Pereira rejected the argument that the "Notice to Appear" did not have to include the time and location of the removal proceeding, because that would defeat the ultimate objective of requiring notice—allowing the person to prepare for the hearing and potentially consult with counsel. 138 S. Ct. at 2114-15. As the Court noted, if there was no requirement for this information "the [g]overnment could serve a document labeled 'notice to appear' without listing the time and location of the hearing and then, years down the line, provide that information a day before the removal hearing when it becomes available." Id. at 2115. Under such an interpretation "a noncitizen theoretically would have had the 'opportunity to secure counsel,' but that opportunity will not be meaningful" as the person would not truly have the opportunity to consult with counsel and prepare for the proceeding." Id. As a Notice of Hearing, like the one here, is not explicitly connected to a particular Notice to Appear and the associated charges, the Court finds that it cannot serve to 'cure' a defective Notice to Appear such as in this case.

### B. The Defendant Suffered Prejudice[1]

The Court further finds that the Soto-Mejia suffered prejudice as a result of the defect in the underlying proceeding. Specifically, he was subjected to removal twice based upon the initial

---

[1] The Court finds that Soto-Mejia is not required to have exhausted any possible administrative remedies, because (a) the Supreme Court decision in Pereira issued after his March 7, 2018 proceeding and (b) defects as to subject matter jurisdiction may be raised at any time. Compagnie des Bauxites, 456 U.S. at 702-03.

6

March 7 Order which the immigration court did not have jurisdiction to issue. The government's argument that Soto-Mejia was not prejudiced because he "participated" in the removal proceedings misses the point. It is immaterial if he participated in the proceedings. He suffered prejudice by the issuance of the deportation orders because the immigration court lacked jurisdiction to order his removal on March 7, 2018.

**IV.    Conclusion**

For the reasons stated, the Court finds that the March 7 and March 19 deportation orders are void due to the immigration court's lack of jurisdiction. As these orders are void, the Court finds that the government cannot establish a predicate element—the prior removal or deportation of Soto-Mejia—of the sole offense in the Indictment. The Indictment in this case must therefore be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss is GRANTED. The Indictment in this case is DISMISSED. The Clerk of Court shall close this case.

**IT IS FURTHER ORDERED** that, as this Court has no authority to detain Defendant Soto-Mejia pursuant to this case, he is **ORDERED IMMEDIATELY RELEASED**.

DATED this 6th day of December, 2018.

                                             _____
                                             RICHARD F. BOULWARE, II
                                             UNITED STATES DISTRICT JUDGE